## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHN KEMP, Individually, and as a              )
Special Administrator of the ESTATE            )
OF TERESA LEANN KEMP,                          )
                                               )
       Plaintiff/Judgment Creditor,    )
                                               )     Case No. 12-2739-JAR-KGG
v.                                             )
                                               )
KASTON HUDGINS,                                )
                                               )
       Defendant/Judgment Debtor,      )
                                               )
and                                            )
                                               )
DAIRYLAND INSURANCE COMPANY,                   )
                                               )
       Garnishee.                      )
_____ )

## ORDER ON PLAINTIFF'S MOTIONS TO COMPEL AND
## STRIKING PORTIONS OF PLAINTIFF'S MOTIONS

Before the Court are Plaintiff's three motions to compel and supporting

memoranda, filed on December 15 and 18, 2014.  (Docs. 64, 66, 68.)  After

reviewing the submissions of the parties, and striking certain pleadings for being in

violation of District of Kansas local rules, the Court **GRANTS in part** and

**DENIES in part** Plaintiff's motions as more fully set forth below.

## BACKGROUND

The above-captioned matter is a garnishment action filed by Plaintiff who is seeking to collect from Garnishee Dairyland Insurance Company ("Garnishee"). (Doc. 1.)  Garnishee insured Defendant, who was in an automobile accident that resulted in the death of Plaintiff's wife and daughter.  (Doc. 27, at 2.)  That automobile accident lead to a wrongful death lawsuit filed by Plaintiff against Defendant (hereinafter "the underlying lawsuit").  (*See* Doc. 1-1.)  Plaintiff also alleges that Garnishee acted in bad faith or negligently in failing to settle the underlying lawsuit against Defendant, which resulted in a judgment against Defendant in excess of $5 million, well beyond the policy limits.  (*Id.*, at 9-20.) Defendant filed a timely appeal with the Kansas Court of Appeals in the underlying lawsuit, which remains pending and is set for oral argument on September 17, 2013.  (Doc. 27, at 2.)

Plaintiff brings the three subject motions seeking to compel Garnishee to respond to Plaintiff's Interrogatories (Doc. 64), Requests for Production (Doc. 66), and Requests for Admission (Doc. 68.)  Plaintiff served 13 Interrogatories, 129 Requests for Production, and 541 Requests for Admission.  The sheer volume of discovery requests involved, in addition to the manner in which Plaintiff has chosen to brief the various legal issues, has complicated this process.

2

## <u>DISCUSSION</u>

**A.      Order Striking Improper Portions of Plaintiff's Motions.**

In the matter presently before the Court, Plaintiff has filed three separate

discovery motions.  The motions themselves (not the memoranda) are,

respectively, 35 pages (Doc. 64, relating to Interrogatories), 193 pages (Doc. 66,

relating to Requests for Production), and 864 pages (Doc. 68, relating to Requests

for Admission).

In each motion, Plaintiff sets out verbatim the discovery request,

Garnishee's response and then, as to each discovery request, Plaintiff offers, in

italicized single-spaced print, his opposition to Garnishee's responses and

objections.  In the motion at Doc. 64 (relating to Interrogatories), this occupies

more than 30 pages.  In Doc. 66 (regarding Requests for Production), it occupies

**more than 190 pages**.  In Doc. 68 (regarding Requests for Admission), it

encompasses **more than 850 pages**.  The memoranda in support, on the other

hand, are concise and of reasonable length.

The sections in the motions setting out Plaintiff's opposition to the

objections are simply legal analyses which belong in the argument sections of the

corresponding memoranda, which are limited by rule to 30 pages.  D. Kan. Rule

7.1(e).  A party cannot avoid the operation of this District Court rule by moving

legal argument to the motion.  The Court thus **STRIKES** and disregards these improper sections of Plaintiff's motions.

**THEREFORE**, the portions of Documents 64, 66 and 68 containing argument, as described herein, are hereby **STRICKEN**.  The Court will, however, review the merits of Plaintiff's legal arguments as contained solely in the accompanying briefs.

**B.    Standards for Discovery.**

Fed.R.Civ.P. 26(b) states that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  As such, the requested information must be both nonprivileged and relevant to be discoverable.

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence."  ***Teichgraeber v. Memorial Union Corp. of Emporia State University***, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted).  "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information

4

sought may be relevant to the subject matter of the action." ***Smith v. MCI Telecommunications Corp.***, 137 F.R.D. 25, 27 (D.Kan.1991).  Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request.  ***See Swackhammer v. Sprint Corp. PCS***, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections).

**C.**     **Motions to Compel (Docs. 64, 66, and 68).**

Many of the arguments contained in the memorandum in support of Plaintiff's motion to compel Interrogatory responses (Doc. 65) are repeated in the memoranda supporting his motions to compel responses to his Requests for Production (Doc. 67) and to his Requests for Admissions (Doc. 69).  For example, Plaintiff addresses the issues of attorney-client privilege, the work product doctrine, the "insurer-insured privilege," and conditional responses in the context of Garnishee's responses to more than one type of discovery.  (*See generally* Docs. 65, 67, and 69.)  Frequently, the argument is repeated verbatim in all three memoranda – often with no discussion of how the discussion relates to the specific, underlying discovery requests.  To the extent an argument is contained in

more than one memorandum, the Court will address the various types of discovery

responses simultaneously.

> **1.     Whether the attorney-client privilege and work product doctrine are implicated by Plaintiff's discovery requests.**

Plaintiff's contends is that the information sought by his 13 interrogatories

does not implicate the attorney-client privilege and work product doctrines

"because they do not seek the production or content of any document or

communication, nor [sic] do they seek the mental impressions of counsel." (Doc.

65, at 4.)  In other words, Plaintiff merely asks Garnishee "to <u>identify</u> various

documents and communications regarding Defendant [sic] Dairyland's handling of

the underlying claims . . . ." (*Id.*, emphasis in original.)  The Court agrees that

attorney-client privilege "does not apply to the fact of communication between a

client and attorney." ***Burton v. Reynolds Tobacco Co., Inc.***, 170 F.R.D. 481, 484

(D. Kan. 1997).  Rather, "[i]t is the substance of the communication which is

protected, not the fact that there has been communication." *Id*.  To the extent

Plaintiff is merely requesting that Garnishee <u>identify</u> such communications,

Plaintiff's motion is **GRANTED**.

Plaintiff makes the same argument in regard to his Requests for Admissions.

(Doc. 69, at 4-5.)  Plaintiff's memorandum does not, however, refer to any specific

requests.  (*Id.*)  "It is not the province of the Court to review the discovery

responses in their entirety and attempt to guess as to why Plaintiff found them to be improper" or objectionable. *Lynn v. Maddox*, No. 12-3104-MLB-KGG, 2014 WL 129340, at *2 (D. Kan. Jan. 14, 2014).  As noted above, Plaintiff's "motion" to compel regarding the Requests for Admissions is 864 pages long and discusses literally hundreds of Requests for Admission and the various ways Plaintiff finds Garnishee's responses to be improper.  Even had the contents of the underlying motion not been stricken for failing to comply with the relevant District Court rule, the Court would not be inclined to review hundreds of Requests for Admission in an attempt to surmise which of the multitude of Requests, in Plaintiff's opinion, seek to verify the authenticity of documents, identify documents and/or communications, admit certain occurrences during the claims handling process, and/or admit Garnishee's awareness of certain facts.  (Doc. 69, at 4-5.)  *See  Lynn*, 2014 WL 129340, at *2.

Plaintiff next argues that Garnishee has failed to establish attorney-client privilege or the protections of the work product privilege because it has "failed to meet its burden of proving each and every element" of the privilege and doctrine. (Doc. 65, at 5-9, Doc. 67, at 4-8, Doc. 69, at 5-9.[1])  The Court notes that any such

---

[1] Plaintiff does not refer to any specific Requests for Production or Requests for Admission.

tangible documents being withheld in response to Plaintiff's discovery requests on the basis of the attorney-client privilege or work product doctrine should be contained, and adequately described, in an appropriate privilege log.

To the extent Garnishee has not provided the requisite privilege log, it is hereby instructed to do so or the asserted privileges and protections will be deemed waived.  Garnishee is directed to this Court's prior decisions of ***Helget v. City of Hays***, No. 13-2228-KHV-KGG, 2014 WL 1308890 (D.Kan. March 28, 2014) and ***Kear v. Kohl's Dept. Stores, Inc.***, No. 12–1235–JAR–KGG, 2013 WL 3088922, *3 (D.Kan. June 18, 2013) for discussions as to what constitutes an adequate privilege log providing sufficient information to allow the other party assess the claimed to privilege.[2]

## 2.   Whether privilege waived because documents have been "placed at issue."

Plaintiff also argues that Garnishee "has placed documents from the claims files at issue by using some of its claims documentation in its Motion for Summary Judgment, and, as such, has waived its claim of privilege and work product immunity for its claims documentation by placing those documents at issue." (Doc. 65, at 10; *see also* Doc. 67, at 10-11, Doc. 69, at 9-14.)  Plaintiff continues

---

[2] By providing the requisite privilege log, Garnishee is instructed to address Plaintiff's concerns contained in Doc. 65, at 5-9, Doc. 67, at 4-8, and Doc. 69, at 5-9.

that it would be "manifestly unfair to allow [Garnishee] to use only the beneficial documents in its claims files to defend against Plaintiff's claims of bad faith and negligence, while also allowing [Garnishee] to refuse to disclose remaining portions of its claims files by claiming privilege or work-product."  (Doc. 65, at 10; *see also* Doc. 67, at 11.)

Plaintiff's argument is not persuasive.  Parties in litigation routinely withhold portions of files or larger document collections – or even passages within a single, specific document – on the basis of attorney-client privilege or work-product protection.  Further, Plaintiff's counsel previously stated in writing that production of these documents from the claims file would not constitute a waiver of privilege.  (Doc. 75-3.)  The Court finds no waiver of the privilege and Plaintiff's motions are **DENIED** in this regard.

### 3. Whether Plaintiff has established "substantial need" for the claims file.

Plaintiff also contends that he should be allowed to overcome Garnishee's work product protection because he has "substantial need" for the claims file materials at issue.  (Doc. 65, at 10-11; Doc. 67, at 13-14; Doc. 69, at 14-15.)  In support of this position, Plaintiff relies almost entirely on a statement in the Report of Parties' Planning Meeting that Defendant and Garnishee "do not necessarily disagree" with Plaintiff's assertion that he has "substantial need for the documents"

9

in the underlying state court action.  (Doc. 65, at 11; Doc. 67, at 14; Doc. 69, at

14.)

     The Court is not persuaded that this single reference by Garnishee to not

necessarily disagreeing with Plaintiff, taken in conjunction with the state court

action being resolved, establishes sufficient need to waive the protections of the

attorney-client privilege and work product doctrine.

> [T]he requesting party may still discover work product if
> it can show that it has substantial need for the material,
> and cannot, without undue hardship, obtain their
> substantial equivalent by other means; however, the
> Court is to protect against disclosures of the mental
> impressions, conclusions, opinions, or legal theories of a
> party's attorney. Fed.R.Civ.P. 26(b)(3)(A) and (B).

*S.E.C. v. McNaul*, 271 F.R.D. 661, 665 (D. Kan. Dec. 22, 2010).  The Court finds

that Plaintiff's limited analysis of this issue establishes neither the requisite

substantial need nor the inability to obtain the material by other means without

undue hardship.  Plaintiff's motions are **DENIED** in this regard.

### 4.    Insurer-insured privilege.

     Plaintiff's memoranda all include a section, that is basically repeated

verbatim in each memoranda, regarding Garnishee's apparent use of the "insurer-

insured privilege."  (*See* Doc. 65, at 11-12, Doc. 67, at 14-15, and Doc. 69, at 15-

16.)  Plaintiff does not indicate, however, which of Garnishee's responses invoke

this privilege.  The Court will not review the entirety of the voluminous discovery

responses excerpted in Plaintiff's stricken motions to make this identification for

Plaintiff.

That stated, the Court is unable to find a single decision from a Kansas

court, state or federal, recognizing the insurer-insured privilege.  The Court sees no

reason, based on the limited argument and discussion submitted by the parties, to

create such a privilege at the present time.  The Court, therefore, **overrules**

Garnishee's objections based on this privilege.

Garnishee is instructed to provide supplemental responses to Plaintiff's

Interrogatories, Requests for Production, and Requests for Admission removing all

such objections on the basis of the insurer-insured privilege.[3]  In particular, the

Court refers Garnishee to discovery requests relating to the statements of Ashley

Kelley and Defendant Hudgins (*see* Doc. 67, at 18) as well as to those requests

relating to the engagement letter(s) between Garnishee and the law firm.

### 5.    Conditional responses.

Finally, Plaintiff argues that Garnishee's responses to Interrogatories Nos. 2,

7, and 8 include improper conditional responses.  (Doc. 65, at 13.)  This Court has

---

[3] This ruling is limited to the "insurer-insured privilege" and does not implicate
other privilege or protection objections raised by Garnishee.

11

consistently found that such conditional responses are improper.

> Conditional responses 'occur when 'a party asserts objections, but then provides a response 'subject to' or 'without waiving' the stated objections.'' **Westlake v. BMO Harris Bank N.A.**, No. 13–2300–CM–KGG, 2014 WL 1012669, *3 (D.Kan. March 17, 2014) (citing **Sprint Comm'n Co., L.P. v. Comcast Cable Comm'n, LLC**, Nos. 11–2684–JWL, 11–2685–JWL, 11–2686–JWL, 2014 WL 54544, *2, 3 (D.Kan. Feb. 11, 2014). *See also*, **Everlast World's Boxing Headquarters Co. V. Ringside, Inc., et al.**, No. 13–2150–CM–KGG, 2014 WL 2815515, at *3 (D.Kan. June 23, 2014). This Court reiterates its agreement with the Sprint decision that found such conditional responses to be 'invalid,' 'unsustainable,' and to 'violate common sense.' 2014 WL 54544, *2, 3.

**EEOC v. BNSF Ry. Co.**, No. 12-2634-JWL-KGG, 2015 WL 161192, n.1 (D. Kan. Jan. 13, 2015).

Garnishee contends that it has merely stated "an 'objection to part of [the] request' provided that the response specifies the part objected to and responds to the non-objectionable portion." (Doc. 75, at 15 (quoting **Sprint**, *supra*., at *3).) A review of the actual Interrogatory responses, however, satisfies the Court that Garnishee's responses are text book examples of conditional responses – replete with multiple "to the extent" objections in each response, while providing "responses" that are made "without waiving" such objections. (Doc. 64, at 2-3, 18-20.) The Court finds all such conditional responses to Plaintiff's Interrogatories to be improper and **GRANTS** this portion of Plaintiff's motion (Doc. 64). Garnishee

is instructed to provide supplemental responses without such language.  As to any documents withheld on the basis of the attorney-client privilege and/or work product doctrine, the same shall be identified in a privilege log.

Plaintiff also raises this issue in regard to "multiple conditional responses" by Garnishee to Plaintiff's Requests for Production and Requests for Admission. (Doc. 67, at 15; Doc. 69, at 16-17.)  Plaintiff does not, however, indicate which of the responses to these discovery requests he believes to contain such conditional responses.  "It is not the province of the Court to review the discovery responses in their entirety and attempt to guess as to why Plaintiff found them to be improper" or objectionable.  *Lynn*, 2014 WL 129340, at *2.  Plaintiff's motions are **DENIED** in regard to any such conditional responses to his Requests for Production and Requests for Admission (Docs. 66, 68).

## 6.    Production of documents supporting Garnishee's contentions.

According to Plaintiff, "[s]everal of [his] Second Request for Production are contention requests that ask [Garnishee] to produce documents supporting specific allegations or denials [Garnishee] has made during the course of this garnishment action." (Doc. 67, at 16.)  Again, however, Plaintiff has failed to identify the specific document requests at issue.  As such, the Court will not review the Garnishee's responses to the entirety of Plaintiff's discovery responses and attempt

to determine which responses Plaintiff finds to be improper. *Lynn*, *supra.* The Court will generally state, however, that such document requests are not premature.

A party is entitled to discover another party's contentions and to engage in discovery related to those contentions. If a request assumes a contention which the responding party is not asserting or maintaining in the case, a valid objection to that effect may be imposed by the responding party disclaiming the contention. The responding party would then be considered bound by such disclaimer, unless through additional discovery or development the party changes its position and adopts the contention. In such a situation, a duty to update its discovery responses would arise under Fed.R.Civ.P. 26(e).

### 7. Discoverability of attorney-fee agreements, engagement letters, and billing records.

Plaintiff cites several cases for the proposition that Garnishee's attorney-fee agreements, engagement letters, and billing records with the firm defending the underlying action are discoverable. (*See* Doc. 67, at 19.) The Court agrees, and Garnishee concedes, that, under Kansas law, "the general rule is that information regarding clients' fees is not protected by the attorney-client privilege because payment of fees is not a confidential communication between attorney and client." *Cypress Media Inc. v. City of Overland Park*, 997 P.2d 681, 692 (Kan. 2000) (internal citation omitted).

14

Garnishee argues, however, that Plaintiff

> has not met his burden of proving [the fee agreement and
> bills] are within the scope of discovery as being relevant
> to any disputed issue or likely to lead to the discovery of
> admissible evidence.  [Plaintiff] says he needs those
> materials to establish who [the law firm] represented in
> the underlying action and who paid that firm's bills.
> Those issues are not in dispute, however.  [The law firm]
> represented [Defendant] Hudgins, and [Plaintiff] knows
> that as he litigated the underlying claim against
> [Defendant] for several years. [Garnishee] retained [the
> law firm] to defend [Defendant], which [Plaintiff] also
> knows.  There is no dispute in this regard.

(Doc. 75, at 19.)  Garnishee has misstated the standard for discovery.  The standard

is not whether the information is relevant to any "disputed issue."  As discussed

above, "'[d]iscovery relevance is minimal relevance,' which means it is possible

and reasonably calculated that the request will lead to the discovery of admissible

evidence."  *Teichgraeber*, 932 F.Supp. at 1265 (internal citation omitted).

While the Court acknowledges Garnishee's admission regarding the

retention of the law firm, this does not mean that Plaintiff is foreclosed from

seeking discovery to confirm this, or any other, admission.  For instance, just

because a party has admitted a material fact in deposition testimony does not mean

the opposing party is foreclosed from using Requests for Production to compile

documents confirming such a fact.  Similarly, Plaintiff is within his rights granted

by the Rules of Civil Procedure to seek documentation regarding this legal

15

representation.

The Court also agrees with Garnishee, however, that certain information, such as narrative entries contained within billing records or fee invoices, "could reveal work product in the form of strategic considerations and the like."  (Doc. 75, at 18-19.)  Therefore, certain information may need to be redacted to preserve those privileges.  As such, it is possible that Plaintiff will not receive all the information he seeks "to demonstrate what actions were and were not taken by [the law firm] in defending the underlying claim and in communicating with [Defendant]" (Doc. 67, at 19) as this may "invade [Defendant's] attorney-client and work-product" protections (Doc. 75, at 19).

**8.      Discoverability of claims manual, training manuals, and standard claim forms.**

Plaintiff next contends that

> [a]n insurer's claim handling materials are relevant and subject to production in a suit in which an insured asserts bad faith claims against the insurer, notwithstanding an insurer's objection that it should be required to produce such documents only to the extent that they were in force during the periods when claims were made and when policies were in effect, as timing and extent of any changes to insurers procedures regarding claims handling could lead to discovery of admissible evidence relating to insurer's bad faith.

(Doc. 67, at 20 (citation omitted).)  Garnishee responds that, based on the Court

entering a Protective Order, it "is producing claim handling manuals and training materials that were in effect for claims fo the type [Plaintiff] asserted against [Defendant] from the time [Plaintiff] first asserted his claim until final resolution of the underlying lawsuit."  (Doc. 75, at 20.)  Plaintiff argues that "manuals and forms which were not applicable during the time period in which the underlying claims was being handled" may be relevant.  (Doc. 67, at 20.)

The Court acknowledges the possible relevance of such documents.  Plaintiff has, however, wholly failed to address how or why such materials (from outside the time frame the underlying claims were handled) could even possibly be relevant.  Simply saying that the documents could be relevant does not make them so, nor does it make them discoverable.  The Court finds that Garnishee's proffered production with the corresponding time limitation is appropriate.  Plaintiff's motion is **DENIED** in this regard.

### 9.   Garnishee's bad faith analysis and research.

Without providing any legal authority, Plaintiff seeks production of Garnishee's "bad faith analysis and research generally, and for the claims arising out of the subject collision."  (Doc. 67, at 21.)  Plaintiff argues that Garnishee's work product objections should be overruled because Garnishee "has failed to prove each and every element of work product."  (*Id*.)  The Court finds this

argument to be unpersuasive as "analysis and research" by their very nature go to
the heart of work product.

Plaintiff also argues that Garnishee has waived work product protection for
its

> bad faith research and analysis by utilizing in support of
> its Motion for Summary Judgment correspondence from
> its attorneys which contains not only bad faith analysis
> and research, but also legal opinions about whether or not
> [Garnishee's] conduct 'establishes bad faith' and
> strategies for [Garnishee] to employ regarding bad faith
> issues in this case.

(*Id.*)  Garnishee responds that none of the correspondence at issue

> consists of any internal analysis or analysis held
> confidential; rather, they are all letters among counsel in
> the case.  To adopt [Plaintiff's] argument would
> eliminate the ability of adverse attorneys to in any way
> discuss the merits of the claim they are litigating:  under
> Kemp's theory, merely stating an analysis or opinion
> regarding a claim to opposing counsel or exchanging
> opposing viewpoints concerning the merits would waive
> the work-product privilege for all analyses and opinions,
> even those held confidential and not disclosed, such that
> any discussion of the merits of a case would waive each
> party's privilege.  Obviously, that would be an untenable
> and unacceptable rule, and it has not support in the law.

(Doc. 75, at 21-22.)

The Court agrees with Garnishee.  The Court is aware, as counsel should be,
that attorneys representing adverse parties frequently send correspondence to

18

opposing counsel containing analysis of the strength and/or weaknesses of claims and/or defenses in dispute.  This is a vital part of the litigation process and can frequently be used to facilitate settlement negotiations.  Doing so does not waive attorney-client privilege or work product protection for the underlying legal research and analysis.  A finding by the Court consistent with Plaintiff's position would set a dangerous and entirely unproductive precedent.  This portion of Plaintiff's motion to compel (Doc. 67) is **DENIED**.

> ### 10.    Garnishee's allegedly improper responses to Requests for Admission.

Plaintiff next complains of Garnishee's "inability to admit or deny many Requests for Admission after allegedly conducting a 'reasonable inquiry' (with no mention of what steps were taken to attempt to obtain information)."  (Doc. 69, at 17.)  Plaintiff has, however, failed to indicate which of Garnishee's responses are improper in this regard.  Plaintiff's motion, which contains over 850 pages of analysis and discussion of Garnishee's responses, has been stricken, *supra*. Further, even assuming the motion had not been stricken, the Court will not review the hundreds of Requests for Admissions submitted by Plaintiff in an attempt to determine which of Garnishee's responses Plaintiff may find objectionable in this regard. ***Lynn***, 2014 WL 129340, at *2.

Plaintiff also complains about Garnishee "repeatedly object[ing] and

refus[ing] to fully answer Plaintiff's Requests for Admission on the grounds that the Requests 'assume[] as true purported facts that have not been admitted or otherwise established . . .'" (Doc. 69, at 18.)  Plaintiff's brief, however, discusses only Request for Admission No. 83.  (*Id.*)

Finally, Plaintiff complains of Garnishee's "attempts to read ambiguity into otherwise unambiguous terms and phrases in Plaintiff's Requests for Admission in a thinly shrouded attempt to avoid answering the Requests for Admission." (Doc. 69, at 20.)  Again, however, Plaintiff has addressed only one such response, that being Garnishee's answer to Request for Admission No. 12 and its use of the term "greatly."  (*Id.*)

That stated, Garnishee has failed to address these issue in its response brief. As such, it has waived any argument and this portion of Plaintiff's motion is **GRANTED** as uncontested.  *Cf. **Sonnino v. University of Kansas Hosp. Auth.**,* 220 F.R.D. 633, 642 (D.Kan. March 31, 2004) (internal citation omitted) (holding that when an argument is "not relied upon in response to the motion to compel," the court will deem it "abandoned").

Pursuant to Fed.R.Civ.P. 36(a)(4),

> [i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith

> requires that a party qualify an answer or deny only a part
> of a matter, the answer must specify the part admitted
> and qualify or deny the rest. The answering party may
> assert lack of knowledge or information as a reason for
> failing to admit or deny only if the party states that it has
> made reasonable inquiry and that the information it
> knows or can readily obtain is insufficient to enable it to
> admit or deny.

Garnishee is instructed to review and supplement its responses to Plaintiff's

Requests for Admissions accordingly.  In doing so, Garnishee is instructed to give

common words and phrases their ordinary meanings.  "If necessary, [Garnishee]

can admit or deny requests which contain undefined phrases by defining the phrase

themselves."  *Audiotext Communs. Network, Inc. v. US Telecom, Inc.*, No. 94-

2395-GTV, 1995 WL 625744, at *6 (D. Kan. Oct. 5, 1995).


**IT IS THEREFORE ORDERED** that Plaintiff's Motions to Compel

(Docs. 64, 66, and 68) are **GRANTED in part** and **DENIED in part** as more fully

set forth above.  To the extent that supplemental responses and information are

required by this Order, Garnishee shall serve the same on Plaintiff within **thirty**

**(30) days** of the date of this Order.  The Court acknowledges that certain discovery

issues may not have been resolved in their entirety because of the improper manner

in which Plaintiff has submitted his legal arguments to the Court.  The parties are

admonished, wherever possible, to apply the instruction contained in this Order to whatever remaining discovery issues may remain.  To the extent the parties are unable to resolve any such issues, they are instructed to contact the undersigned Magistrate Judge to schedule an informal discussion regarding any such issue prior to filing any additional motion(s).

Dated at Wichita, Kansas, on this 2nd day of March, 2015.

 S/ KENNETH G. GALE                            
KENNETH G. GALE
United States Magistrate Judge